IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

```
HEIKE OBERGANTSCHNIG,            :
                                 :
                    Plaintiff,   :
                                 :
        v.                       :   CIVIL ACTION
                                 :
SAW CREEK ESTATES COMMUNITY      :
ASSOCIATION, INC., JAMES ANDREWS,:
PEGGY GOTTSCHAU and ARTIE FURMAN :   NO. 12-cv-5911
                                 :
                    Defendants.  :
```

## MEMORANDUM AND ORDER

Before the Court are Defendants' Motion for Summary Judgment (Doc. No. 17), Plaintiff's Response thereto (Doc. No. 18), and Defendants' Reply in further support thereof (Doc. No. 19). For the reasons below, summary judgment is GRANTED on all of Plaintiff's claims.

## II.  BACKGROUND

This case arises out of Plaintiff Heike Obergantschnig's employment at Saw Creek Community Association ("Saw Creek"), a planned residential community association in Bushkill, Pennsylvania. (Def. Statement of Undisputed Material Facts at 1 ("Def. Facts")). Ms. Obergantschnig was employed as a Dispatch Officer in Saw Creek's Public Safety Department from January 2008, id. at 3, until January 10, 2011. Id. at 10. Brian Kaiser,

1

with whom Plaintiff worked regularly, was employed as a Watch Commander in the same department. (Def. Motion for Summary Judgment at 11).

Plaintiff alleges that, in 2008 or 2009, Mr. Kaiser rubbed her shoulders and asked her out on dates multiple times. (Def. Ex. C at 157). Plaintiff did not report these actions to Saw Creek management at the time. Id. In mid-2009, Plaintiff began dating Aaron Brown, a Watch Commander. Id. at 126. Relations between Mr. Kaiser and Ms. Obergantschnig, as well as between Mr. Kaiser and Mr. Brown, subsequently deteriorated. Id. at 127-129. In the fall of 2009, Mr. Kaiser told Plaintiff that she should have slept with him before she slept with Mr. Brown, and that Mr. Kaiser could not "do her" now that Plaintiff was involved with Mr. Brown. Id. at 157.

On August 12, 2010, in response to an email setting a general Public Safety Department meeting, Plaintiff wrote to Peggy Gotschau, the Human Resources Manager, and Artie Furman, the Assistant Director of the Public Safety Department, explaining that she did not want to attend the meeting because she assumed it concerned issues she was having with Mr. Kaiser. (Def. Facts at 4). In this email, Plaintiff requested a meeting with Ms. Gottschau alone, or one with Ms. Gottschau and Mr. Furman. (Pl. Additional Statement of Undisputed Facts at 11 ("Pl. Facts")). Plaintiff raised her complaints about Kaiser, which

2

detailed problems in their work relationship, in her email. These included complaints of Mr. Kaiser's using a sarcastic tone of voice when speaking to Plaintiff, referring to her as part of a "vicious trio," accusing Plaintiff of not answering the radio in a timely fashion, and prohibiting Plaintiff from making personal calls at work while he did make personal calls. (Def. Ex. I). The email also mentioned that Mr. Kaiser had stated in the presence of two other employees that Plaintiff had been "a hooker in New York." (Def. Facts at 4). Mr. Furman replied to Plaintiff's email stating that they could meet, and that "our doors are always open." Id.

Ms. Gottschau scheduled a meeting for August 13, 2010, with Mr. Furman, Mr. Kaiser, Plaintiff, Mr. Andrews, Director of the Public Safety Department, and herself. Id. at 5. The reason Ms. Gottschau chose to involve Mr. Andrews and Mr. Furman in the meeting, and not have one with Plaintiff alone, was "[b]ecause that's kind of how we roll here. We're very transparent. If there are issues, we put them on the table. And everybody involved, especially these kinds of . . . petty issues, that's how we discuss them." (Pl. Facts at 12; Def. Response to Pl. Facts at 8).

During the meeting, Mr. Kaiser stated that he had no recollection of calling Plaintiff a hooker, but said he was sorry if he had done so. (Def. Motion for Summary Judgment at 5). Mr.

3

Kaiser was warned by Mr. Andrews and Ms. Gottschau that behavior such as the hooker comment was inappropriate and would not be tolerated. (Def. Facts at 5). Plaintiff did not raise in the meeting any issues outside of those already mentioned in her August 12th email. Plaintiff was uncomfortable speaking freely with Mr. Kaiser present, and believed Mr. Furman and Mr. Andrews to be allied with Mr. Kaiser due to their relationship outside of work. (Pl. Response to Def. Statement of Undisputed Facts at 3 ("Pl. Response to Def. Facts")). Plaintiff did not ask for a subsequent meeting with Ms. Gottschau without Mr. Kaiser present, because "they seemed to brush [the previous meeting] off," (Def. Ex. C at 169), and "they were trying to wrap it up without letting me talk." Id. at 168-69.

In September and November of 2010, Mr. Kaiser stated to Plaintiff or to other employees[1] that Plaintiff had been "railroaded"[2] by every Saw Creek employee and that Plaintiff was having an affair with former Security Director Joe Farrell. Id. at 160. On a different occasion, Mr. Kaiser put his arms around Plaintiff's waist for a couple of seconds and told her that she was "too skinny" while the two of them were in the dispatch

---

[1] While Plaintiffs contend that Mr. Kaiser "spread rumors" to this effect, (Pl. Facts at 10), Defendants maintain that the comment was made only between Mr. Kaiser and Plaintiff (Def. Response to Pl. Facts at 17.)

[2] Plaintiff's understanding of this comment was that it meant that Plaintiff had had sexual relations with every Saw Creek employee. (Pl. Facts at 10).

office. Id. at 158. Mr. Kaiser further made statements to Mr. Brown that Plaintiff was "using him [Mr. Brown]," that she was a "slut," (Pl. Facts at 10) and called her a prostitute, hooker, and cunt. (Def. Ex. D at 57). Mr. Kaiser made these comments to Mr. Brown both at work and outside of work. (Def. Ex. D at 58). Once they began, "the sexual comments"[3] were "continuous[]" throughout Plaintiff's employment and beyond her termination. (Pl. Facts at 10; Def. Ex. C at 237-38). Mr. Brown maintains that he reported these inappropriate comments to Mr. Andrews, who took no action, (Def. Ex. D at 50-51), while Defendants deny that Mr. Brown reported the statements to Mr. Andrews (Def. Response to Pl. Facts at 10). Plaintiff herself did not make any complaints to Saw Creek management regarding sexual acts or comments made by Mr. Kaiser during this time period. (Def. Facts at 6).

However, during September-November 2010, Plaintiff did make several complaints about Mr. Kaiser, all of which concerned their work relationship. Id. For example, Plaintiff alerted management to the fact that Mr. Kaiser had asked her not to assign a report number to an incident, a request violating Saw Creek protocol (Def Ex. M), and Mr. Kaiser refused to chase an ATV that was driving dangerously when Plaintiff reported the incident to him.

---

[3] While Plaintiff's statement of Additional Undisputed Material Facts does not define which sexual comments were ongoing, (Pl. Facts at 10), the depositions of Plaintiff and Mr. Brown - though also far from clear on this point - suggest that the statements made directly to Mr. Brown were those that were ongoing. (Def. Ex. C at 128, 156, 237; Def. Ex. D at 57).

(Def. Ex. C at 190-191). Plaintiff also lodged a similar
complaint about another co-worker, Dana Rutledge. (Def. Facts at
7; Pl. Facts at 4). In late November 2010, Mr. Andrews called a
brief meeting with Plaintiff, Mr. Kaiser, Mr. Brown, and Ms.
Rutledge, and informed them that he believed the four of them
were allowing personal issues to spill over into the workplace.
Id. at 7-8. He told them to stop immediately or risk termination.
Id. Also in October or November 2010, Plaintiff asked Mr. Andrews
to make scheduling changes so that Plaintiff would not have to
work with Mr. Kaiser. (Pl. Facts at 13). Mr. Andrews did make a
change, but it was only temporary, and Plaintiff and Mr. Kaiser
worked together again thereafter. Id.; (Def. Facts at 9).

On December 31, 2010, Plaintiff sent an email to Mr. Martin
and Ms. Gottschau. The email contained complaints about Mr.
Kaiser and detailed further problems in their work relationship.
In the email, Plaintiff wrote that "the work environment at this
point is just beyond toxic," and stated that Mr. Kaiser "has made
it known that he wants to get me fired or that anyone who will
say anything against him will be fired . . . I'm afraid there's
gonna be some form of retaliation from him." (Def. Ex. P).

As a result of this email, Mr. Andrews recommended to David
Martin, Saw Creek's General Manager, that Plaintiff be
terminated. (Def. Facts at 9). Andrews wrote that his
recommendation was based on the fact that "it became clear to us

that nothing short of termination for the people that Obergantschnig did not want to work with would satisfy her. We tried mediation and conflict resolution. We tried other manners. And we just felt that Obergantschnig was not doing her part in mitigating these problems." <u>Id</u>. On January 10, 2011, Plaintiff was terminated. <u>Id</u>. at 10. In June 2011, Mr. Kaiser was terminated for violating his personal improvement plan and for violating warnings he had received about keeping personal issues out of the workplace (Def. Ex. B at 46; Def. Ex U). Mr. Brown was terminated for similar reasons in March of 2013 (Def. Ex. D at 16; Def. Ex. B at 43-44).

On May 23, 2011, Plaintiff filed a Charge with the Equal Employment Opportunity Commission ("EEOC") alleging sexual harassment and retaliation against Saw Creek and individual defendants Ms. Gottschau, Mr. Andrews, and Mr. Furman. On August 23, 2012, Plaintiff filed a complaint in federal court, alleging violations of Title VII of the Civil Rights Act of 1964 and 1991 ("Title VII"), 42 U.S.C. § 2000e *et seq*., and the Pennsylvania Human Relation Act, 43 Pa. C.S.A. § 951 *et seq*. ("PHRA").

## III. STANDARD OF REVIEW

Summary judgment is appropriate under Rule 56 of the Federal Rules of Civil Procedure where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. <u>Michaels v. New Jersey</u>, 222 F.3d 118, 121 (3d Cir.

2000); Fed. R. Civ. P. 56(a). Under the rule, a Court must look beyond the bare allegations of the pleadings to determine if they have sufficient factual support to warrant their consideration at trial. In re Phillips Petroleum Securities Litigation, 881 F.2d 1236, 1243 (3d Cir. 1989).

In considering a summary judgment motion, the Court must view the facts in the light most favorable to the non-moving party and all reasonable inferences from the facts must be drawn in favor of that party as well. Mobilio v. Division of Law and Public Safety of New Jersey, 413 Fed. Appx. 520, 524-25 (3d Cir. 2011). "Material" facts are those that might affect the outcome of the suit under the substantive law governing the claims made. Hart v. Electronic Arts, Inc., 717 F.3d 141, 148 (3d Cir. 2013). An issue of fact is "genuine" only "if the evidence is such that a reasonable jury cold return a verdict for the non-moving party" in light of the burdens of proof required by substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 252 (1986).

## IV. DISCUSSION

The Court will first consider Plaintiff's claims under Title VII of the Civil Rights Act. It will consider the hostile work environment claim, followed by Plaintiff's retaliation claim. The Court will then address Plaintiff's corresponding claims under the PHRA.

**A.    Hostile Work Environment**

Title VII prohibits sexual harassment that is "sufficiently severe or pervasive to alter the conditions of the [plaintiff's] employment and create an abusive working environment." Mandel v. M&Q Packaging Corp., 706 F.3d 157, 167 (3d Cir. 2013)(quoting Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57, 67 (1986)). In determining the viability of a hostile work environment claim, the Court must look to "all the circumstances" of the plaintiff's claim, including whether the conduct was physically threatening or humiliating, whether it unreasonably interfered with the employee's work performance, or  whether it consisted of a mere offensive utterance. Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 116 (2002). The U.S. Supreme Court has "made it clear that conduct must be extreme to amount to a change in the terms and conditions of employment," Farragher v. City of Boca Raton, 524 U.S. 775, 778 (1998), and that "[t]he standards for judging hostility are sufficiently demanding to ensure that Title VII does not become a general civility code." Id. (internal citations omitted).

To be successful in her hostile work environment claim, a Plaintiff must establish that (1) she suffered intentional discrimination because of her sex, (2) the discrimination was severe or pervasive, (3) the discrimination detrimentally affected her, (4) the discrimination would detrimentally affect a

reasonable person in like circumstances, and (5) the existence of *respondeat superior* liability. <u>Mandel</u>, 706 F.3d at 167 (citing <u>Jensen v. Potter</u>, 435 F.3d 444, 449 (3d Cir. 2006), *overruled on other grounds by* <u>Burlington N. & Santa Fe Ry. Co. v. White</u>, 548 U.S. 53 (2006)). While the first four elements establish that a hostile work environment existed, the fifth establishes an employer's liability for that environment.[4] <u>Huston v. Proctor & Gamble Paper Products Corp.</u>, 568 F.3d 100, 104 (3d Cir. 2009)(citing <u>Weston v. Pennsylvania</u>, 251 F.3d 420, 426 (3d Cir. 2001)).

## (a)  Statute of Limitations

A claim of violation of Title VII of the Civil Rights Act of 1964 and 1991 may be brought only after a plaintiff exhausts her administrative remedies. 42 U.S.C. § 200(e)-5(e). In a deferral state like Pennsylvania, the plaintiff must file a charge with the EEOC within 300 days after the alleged unlawful employment practice occurred, or within 30 days of receiving notice that the Pennsylvania Human Rights Commission ("PHRC") has relinquished jurisdiction, whichever is earlier. <u>See</u> <u>id</u>. In this case, Plaintiff filed a Charge of Discrimination both with the EEOC and PHRC on May 23, 2011. (Complaint at 2).

---

[4] Lack of respondeat superior liability is not, as Plaintiff claims, an affirmative defense of Defendants'. Within the Third Circuit, respondeat superior liability is a requisite element of Plaintiff's prima facie case. <u>Huston</u>, 568 F.3d at 104; <u>Mandel</u>, 706 F.3d at 167.

Because a hostile work environment "encompasses a single unlawful employment practice . . . [t]he statute does not separate individual acts that are part of the hostile environment claim from the whole for the purposes of timely filing and liability." Mandel, 706 F.3d at 166 (quoting Morgan, 536 U.S. at 117-18). Under the continuing violation theory available to Plaintiff in a hostile work environment claim, "discriminatory acts that are not individually actionable may be aggregated . . . such acts can occur at any time so long as they are linked in a pattern of actions which continues into the applicable limitations period." Id. at 165-66 (quoting O'Connor v. City of Newark, 440 F.3d 125, 127 (3d Cir. 2006)(internal quotations omitted)). Under the continuing violation theory, the Plaintiff must show that "all acts which constitute the claim are part of the same unlawful employment practice and that at least one act falls within the applicable limitations period," id., and must show "more than the occurrence of isolated or sporadic acts of intentional discrimination." Oliver v. Clinical Practices of University of Pennsylvania, 921 F.Supp.2d 434, 444 (E.D. Pa. 2013)(citing West v. Phila Elec. Co., 45 F.3d 744, 755 (3d Cir. 1995)). In order to evaluate whether a continuing violation has occurred, the Third Circuit has enumerated two non-exhaustive factors to distinguish continuing violations from isolated occurrences: (1) the subject matter, or whether the acts

constitute the same type of discrimination and (2) the frequency
of the underlying acts. Id. With regard to frequency, the Third
Circuit has noted that there is no "specific standard for
determining how close together the acts must occur to amount to a
continuing violation." Cowell v. Plamer Tp., 263 F.3d 286, 295
(3d Cir. 2001).

Defendants contend that Ms. Obergantschnig cannot establish
that the underlying acts were sufficiently frequent as to
constitute a continuing violation, specifically because there was
a gap of several months between certain alleged acts. The
allegedly unlawful acts consist of Mr. Kaiser's[5] (1) rubbing
Plaintiff's shoulders in 2008 or 2009; (2) asking Plaintiff out
on dates in 2008 or 2009; (3) saying he would not be able to "do
her" in the fall of 2009; (4) stating that she was having sexual
relations with her previous supervisor, Mr. Farrell, in early
2010; (5) stating in 2010 that she had been a "hooker" in New
York; (6) putting his arms around her waist and saying she was
"too skinny" in early 2010; (7) stating in 2010 that she had been
"railroaded" by everyone at Saw Creek, and (8) stating to Mr.
Brown, Plaintiff's boyfriend, that Plaintiff was "using" Mr.
Brown and that Plaintiff was a "slut," "whore," and "cunt,"

---

[5] There is dispute between the parties as to whom Mr. Kaiser made
various statements: to Plaintiff only, or to other workers at Saw Creek. For
the purposes of its statute of limitations analysis only, the Court
categorizes these allegations as "statements," without defining the person to
whom the statements were made.

12

throughout Mr. Kaiser's employment at Saw Creek.[6] (Def. Motion
for Summary Judgment at 4; Pl. Facts at 10-16; Def. Response to
Pl. Facts at 5-10; Def. Ex. C at 160-165, 237).

Whether or not the 4 - 7 month break between Mr. Kaiser's
statements in the fall of 2009 and March/April of 2010 is too
long to establish "frequency" as required by Third Circuit courts
is a close question. While a break of multiple years between
incidents clearly negates the continuing nature of an alleged
violation, Coombs v. Target Corp., 2013 WL 664186 at *4 (E.D. Pa.
2013)(two-year break); Hodges v. UPMC Presbyterian Shadyside
Hosp., 2007 WL 654319 at *1 (W.D. Pa. 2007)(two-year break);
Lesko v. Clark Publisher Servcs., 904 F.Supp.415, 420 (M.D. Pa.
1995)(two-year break), breaks between half a year and one year
long have been held insufficient to constitute an ongoing
violation only when the Plaintiff's circumstances have also
changed during that time period. See, e.g., Konstantopoulos v.
Westvaco Corp., 112 F.3d 710, 715-16 (3d. Cir. 1997)(plaintiff

---

[6] Defendants correctly contend that this statement is presented in
Plaintiff's deposition as inadmissible hearsay (Def. Ex. C. at 237). The Court
may consider evidence that, if presented in appropriate form, would be
admissible at trial. See Fed. R. Civ. P. 56(c)(2) ("A party may object that
the material cited to support or dispute a fact cannot be presented in a form
that would be admissible in evidence.")(emphasis added); see also ERBE
Electromedizin GmbH v. Canady Technology LLC, 529 F.Supp.2d 577, 586-87 (W.D.
Pa. 2007)(citing J.F. Feeser, Inc. v. Serv-A-Portion, Inc., 909 F.2d 1524,
1542 (3d Cir. 1990)). Plaintiff's description of the substance of a
conversation between Mr. Brown and Mr. Kaiser may be presented at trial in an
admissible form because Plaintiff is presumably offering the statements not
for their truth, but for the fact of their utterance.
    Moreover, defendants contend that this statement was made outside of
work and is immaterial for the present action. The Court's review of
Plaintiff's deposition does not bear out the fact that this statement was
necessarily made only outside of the workplace.

left work during 7-month break); Robinson v. Home Depot, Inc., 2009 WL 2960990 at *14 (D.N.J. 2009)(during break, plaintiff accepted offer to transfer to another store); Fala v. Perrier Group of America, 20000 WL 688175 at *10-11 (E.D. Pa. 2000)(plaintiff testified that during 10-month break, she had good working relationship with defendant and felt free to ask him for career advice).

Two cases have held that a three or four-month hiatus between incidents, during which time the plaintiff and defendant worked together, prevented the plaintiff from establishing the frequency requirement. See Yeager v. UPMC Horizon, 698 F.Supp.2d 523, 541 (W.D. Pa. 2010); Sicalides v. Pathmark Stores, Inc., 2000 WL 760439 at *6 (E.D. Pa. 2000). In both of these cases, however, the subject matter of the allegedly unlawful acts was different prior to and after the break. In Sicalides, the Court found that while certain acts in May 1997 involved sexual touching, an incident in August 1997 centered on "an ambiguous comment accompanied by a non-sexual nudge." 2000 WL 760439 at *5. In Yeager, the harassment prior to the 3-month break involved sexual acts and text messages, while the acts after the break were corrective employment actions and not sexual in nature. 698 F.Supp.2d at 541.

In Ms. Obergantschnig's case, the subject matter of the acts outside and inside the limitations period is comparable. The statements made by Mr. Kaiser in 2008-2009, and those made in

2010, were all sexual in nature and directed at Plaintiff's sexual conduct or appearance. Moreover, Ms. Obergantschnig presents evidence suggesting that at least one of Mr. Kaiser's actions, in which he made sexual comments about her to her boyfriend Mr. Brown, began in mid-2009 and was "continuous[]" thereafter, even "after 2009." (Def. Ex. C at 236-238). The similar subject matter of the incidents alleged by Ms. Obergantschnig, the fact that all alleged conduct involved the same individual, and Plaintiff's testimony that at least one type of comment was made by Mr. Kaiser both during 2009 and 2010, persuades the Court that Plaintiff has alleged acts that constitute an ongoing pattern. Because at least some of these incidents fall within the statutory period, the Court finds that none of the incidents that Plaintiff has alleged are barred by the statute of limitations.

### (b)  Severe or Pervasive Sexual Harassment

The parties disagree on whether the alleged harassment of Ms. Obergantschnig was pervasive enough to constitute a viable claim. "[H]arassment is pervasive when incidents of harassment occur in concert or with regularity." Andrews v. City of Philadelphia, 895 F.2d 1469, 1484 (3d Cir. 1990). Plaintiffs argue that "Kaiser's rumor-mongering" about Ms. Obergantschnig, and his sexual comments to and about her, meet this standard. (Pl. Opposition to Def. Motion for Summary Judgment at 11).

Evidence of a hostile work environment may come in "the

15

pervasive use of derogatory and insulting terms relating to women generally and addressed to female employees personally." Andrews, 895 F.2d at 1485. Sexual comments that are addressed directly at or about a plaintiff herself, as opposed to comments made about women generally, weigh toward a finding that a hostile work environment existed. Cf Gautney v. Amerigas Propane, Inc., 107 F.Supp.2d 634, 644 (E.D. Pa. 2000). The spreading of false rumors about a woman's sexual affairs, which impugn the integrity of her job performance, may also be the basis of a hostile work environment claim. Spain v. Gallegos, 26 F.3d 439, 446-49 (3d Cir. 1994).

Third Circuit courts have found sexual, derogatory, or insulting statements to be actionable when they are made on a very frequent and continuous, for example weekly, basis. See, e.g., Grazioli v. Genuine Parts Co., 409 F.Supp.2d 569, 578 (D. N.J. 2005)(defendant sang offensive, sexually-related song on a daily basis); E.E.O.C. v. Rose Casual Dining, L.P., Civ.A.02-7485, 2004 WL 614806 at *4 (E.D. Pa. 2004)(frequent lewd behavior, vulgar language, and inappropriate physical contact constituted hostile work environment); Guy v. Day Products, Inc., Civ. A. 94-1699, 1995 WL 701569 at *3 (E.D. Pa. 1995)(derogatory gender-related comments made once or twice per week). Moreover, sexual rumors are actionable when they have a significant effect on plaintiff's job performance or in her interactions with others. In Gallegos, a case heavily relied on by Plaintiff, the

16

plaintiff was the subject of rumors, which developed over the course of 4 years, that she was having an affair with her boss. Spain v. Gallegos, 26 F.3d 439, 440, 449 (3d Cir. 1994). She alleged that these rumors impugned her job performance, caused co-workers to ostracize her and ultimately resulted in her being denied a promotion. Id. at 447-48. The Third Circuit explained that the plaintiff's claim survived a motion for summary judgment because the rumors developed over a period of several years, "manifested themselves through her continuous interaction with her colleagues and supervisors," and continued after the plaintiff asked her boss to put an end to them. Id. at 449.

In contrast, Third Circuit courts have held that statements or rumors made in isolated incidents over a period of time are not actionable. See, e.g., Tourtelle v. Eli Lilly and Co., 2013 WL 1628606 at *6 (E.D. Pa. 2013)(finding fewer than a dozen interactions over the course of 18 months to be sporadic, isolated incidents); Stephenson v. City of Philadelphia, 2006 WL 1804570 at *11 (E.D. Pa. 2008)(nine incidents over 19 months lack the frequency to support hostile work environment claim). If a plaintiff cannot show the Court, in her deposition or otherwise, that the alleged acts occurred with sufficient regularity and were not isolated incidents, her claim cannot survive summary judgment. See Treaster v. Conestoga Wood Specialties, Corp., 2010 WL 2606479 at *17 (M.D. Pa. 2010)(Plaintiff "has not pointed to evidence regarding how frequently she heard these rumors");

17

Bogoly v. Easton Pub. Co., 2001 WL 34368920 at *6 (E.D. Pa.
2001)("[plaintiff] provides no evidence that the rumors she
alleges were widespread or enduring, but merely cites a few
examples during a brief period"); McGraw v. Wyeth-Ayerst
Laboratories, Inc., 1997 WL 799437 at *6 (E.D. Pa. 1997)("[i]n
her deposition, [plaintiff] was unable to pin down how often the
incidents occurred or even if they occurred on a daily, weekly,
or monthly basis").

When all of Mr. Kaiser's actions are viewed in their
totality, Mandel, 706 F.3d at 168, the Court finds that, albeit
repugnant and unacceptable behavior for the workplace, Mr.
Kaiser's behavior does not rise to the level of pervasiveness
necessary to survive a motion for summary judgment. Though
Plaintiff states once in her deposition that a few of Mr.
Kaiser's comments to Mr. Brown that Plaintiff was a "slut" who
was "using" Mr. Brown were "continuous[]," "went on after 2009
. . . throughout the duration of him [sic] employed there,"[7] (Def.
Ex. C at 237, Def. Ex. D at 57), Plaintiff provides no
specificity as to the frequency of these statements in her
deposition or in any other form of evidence. Given the fact that
Plaintiff describes numerous problems with Mr. Kaiser, only on a

---

[7] Plaintiff admits the following fact in Defendant's Statement of
Undisputed Material Facts: "Plaintiff testified that at no time between the
August 12th meeting and the termination on January 11, 2011 was she aware of
Kaiser making any comments about her such as hooker." (Def. Facts at 6; Pl.
Response to Def. Facts at 3). For purposes of this motion, the Court will
consider Plaintiff's more favorable deposition testimony over this
contradictory admission of fact.

minority of which she rests her discrimination claim, it is difficult to parse from Plaintiff's deposition exactly which problems and comments were continuous, and how regular they in fact were. <u>See</u> (Def. Ex. C at 154-56).

Moreover, Plaintiff admits that at least some of these "continuous" statements were not made to her or in her presence; instead, they were made only to her boyfriend Mr. Brown. Even assuming that they were, as Plaintiff alleges, rumors spread to others, she provides nothing to suggest they were widespread, enduring, or affected her relationship with other coworkers. Plaintiff does not show how, like the rumors in <u>Gallegos</u>, Mr. Kaiser's statements impugned the integrity of her job performance.

Additionally, the fact that Plaintiff made multiple complaints to management throughout 2010 about her work relationship with Mr. Kaiser, <u>see</u> (Def. Ex. I, M, N, P), and only referenced a single sexually explicit statement - the hooker comment - leads the Court to believe that, if the terms and conditions of her employment were altered by Mr. Kaiser, they were altered primarily not by Mr. Kaiser's sexual comments, but by the very issues extensively documented by Plaintiff in her complaints. Lastly, the lack of physical threat or humiliation, though its existence is not requisite for a hostile work environment claim, further weighs in favor of granting summary judgment to Defendants. <u>Cf</u>. <u>Petril v. Cheney University of</u>

19

Pennsylvania, 789 F.Supp.2d 574, 579-80 (E.D. Pa. 2011)(hostile work environment existed when defendant, among other things, approached Plaintiff alone in locker room and followed her car after work).

For these reasons, the Court finds that Plaintiff has failed to establish that the discrimination suffered was severe or pervasive. As a result, the Court need not address the remainder of the elements under Plaintiff's hostile work environment claim, and grants summary judgment to defendants accordingly.

**B.   RETALIATION**

To establish a *prima facie* retaliation claim, a Plaintiff must show (1) that she engaged in a protected activity, (2) that the employer took an adverse employment action against her, and (3) that a causal link existed between the protected activity and the adverse employment action. Theriault v. Dollar General, 336 Fed. Appx. 172, 174 (3d Cir. 2009). If the plaintiff makes out a *prima facie* claim, the burden shifts to the employer to set forth legitimate reasons for the action, and may then shift back to plaintiff to show that the employer's reason are a pretext for discrimination. Scheidemantle v. Slippery Rock University State System of Higher Educ., 470 F.3d 535, 539 (3d Cir. 2006)(citing McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-03 (1973)).

**(a) Protected Activity**

To engage in protected activity, the employee must oppose

discrimination under Title VII, and while doing so, "must hold an objectively reasonable belief, in good faith, that the activity she opposes is unlawful under Title VII." Id. at 174 (3d Cir. 2009)(citing Moore v. City of Phila., 461 F.3d 331, 341 (3d Cir. 2006)(internal quotations omitted)). In other words, "if no reasonable person could have believed that the underlying incident complained about constituted unlawful discrimination, then the complaint is not protected." Id. (quoting Wilkerson v. New Media Tech Charter Sch. Inc., 522 F.3d 315, 322 (3d Cir. 2008)).

The parties agree that Plaintiff made several complaints,[8] in the form of email, to Saw Creek management: one in August 2010, a few in September-November 2010, and one in December 2010. Plaintiff claims that these emails constitute protected activity, while Defendants claim they do not.

The August 2010 email contains one statement that Plaintiff contends a reasonable person could have believed to be sexual harassment: "[Mr. Kaiser] was working while I was in Dispatch. While Officer Brown was sitting next to him and Officer Miller

---

[8] Plaintiff additionally points to Mr. Brown's complaints to management about Mr. Kaiser's behavior toward Plaintiff. Even if Plaintiff intends to claim that she was retaliated against as a result of protected activity not by her, but by her boyfriend Mr. Brown - and this would be an indulgent reading indeed of the arguments that Plaintiff has articulated - her claim must fail because she has presented no evidence that Mr. Brown's actions, assuming they constitute protected activity, caused her to be terminated. See Theriault, 336 Fed App'x at 174 (requiring causal link between adverse employment action and protected activity); cf Thompson v. North American Stainless, LP, 131 S. Ct. 863, 870 (2011)(assuming that employer fired Plaintiff in order to retaliate for filing of EEOC complaint by Plaintiff's fiancé, Plaintiff presented viable retaliation claim).

was in the hallway by the dispatch window, [Mr. Kaiser] stated that he heard I was a hooker in NY." (Def. Ex. I). The balance of the email contains numerous allegations about Mr. Kaiser, none of which shade toward a colorable basis for sexual discrimination.[9] The final paragraph of the email ends with the statement, "[T]here are just too many incidences like the ones above . . . at this point I don't feel comfortable going to him anymore if there are any problems or concerns on my shift . . . I do believe that with this attitude he is creating a hostile work environment. I just want to be able to do my job without being singled out because [Mr. Kaiser] has a personal problem with me and doesn't like me." Id.

The September-November 2010 complaints allege that Mr. Kaiser instructed Plaintiff not to assign a report number to an incident and refused to chase an ATV that was driving dangerously. The next email in December 2010, Plaintiff argues, was a complaint that Mr. Kaiser was engaging in retaliation. The email reads, in relevant part,

> [N]othing is changing and the work
> environment at this point is just beyond
> toxic . . . I know that I'm in danger of
> loosing [sic] my job by even writing
> this . . . None of the WC I work with want to
> hear any complaints about WC Kaiser because
> they either fear for their own job by saying

---

[9] They include Mr. Kaiser's using a sarcastic tone when speaking to Plaintiff, referring to her as part of a "vicious trio," and accusing Plaintiff of not answering the radio in a timely fashion, among other things. (Def. Ex. I).

> something or think there's no point in
> complaining in the first place . . . He has
> made it known that he wants to get me fired
> or that anyone who will say anything against
> him will be fired . . . I'm afraid there's
> gonna be some form of retaliation from him,
> because everything that doesn't go his way
> seems to be my fault." (Def. Ex. P).

The Court finds that none of these complaints constitute protected activity. Plaintiff's August 2010 email contains but a single inappropriate statement  - that Mr. Kaiser stated she had been "a hooker in New York." It would not be reasonable for Plaintiff to view this single statement, unless it were much more severe, as sexual harassment. See Fogleman v. Greater Hazleton Health Alliance, 122 Fed. Appx. 581, 584 (3d Cir. 2004)(citing Clark County School Dist v. Breeden, 532 U.S. 268, 271 (2001)("simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment.") Though Plaintiff may have experienced at the time of this email other statements by Mr. Kaiser that a reasonable person could believe were sexual harassment, she did not mention them, and thus they cannot be the subject of her retaliation claim. (Def. Statement of Undisputed Material Facts at 11; Pl. Response to Def. Statement of Undisputed Material Facts at 6).

Plaintiff's September-November and December emails are likewise not protected. Even assuming that Plaintiff reasonably believed that Mr. Kaiser had the power to fire her for making

complaints - a fact hotly disputed by the parties - Plaintiff does not fear retaliation based on any complaints of *gender discrimination*. Instead, the email evidences concern for retaliation based on complaints that Plaintiff makes throughout the email, all of which have to do with personal animosity between her and Mr. Kaiser, disagreements regarding shift schedules and overtime, and making phone calls, among other issues. No reasonable person would believe that Title VII protects an individual from retaliation based on those types of complaints. <u>See</u> <u>Deluzio v. Family Guidance Ctr.</u>, 2010 U.S. Dist. LEXIS 30571 at *40-41 (D. N.J. 2010)(complaints about way defendant treated and spoke to Plaintiff "were not specifically tied to any discriminatory practices" and did not constitute protected activity). As such, the Court grants summary judgment to Defendants on Plaintiff's retaliation claim.

## C.   GENDER DISCRIMINATION

To the extent that Plaintiff intended to bring a claim for gender discrimination under Title VII, the Court grants summary judgment to Defendants on this claim. Plaintiff has not briefed or otherwise addressed the issue in her Opposition to Defendants' Motion for Summary Judgment.

## D.   AIDING AND ABETTING DISCRIMINATION UNDER THE PHRA

The Court grants summary judgment to Defendants on Plaintiff's claims of aiding and abetting retaliation and hostile

work environment. As explained above, Plaintiff has failed to produce sufficient evidence to sustain her underlying discrimination claims, and thus the aiding and abetting claims also fail. See Kern v. Schuylkill I.U. 29, 2010 Dist. LEXIS 94859 at *31 (M.D. Pa. 2010).

**E.    PLAINTIFF'S OTHER PHRA CLAIMS**

Because PHRA claims should be analyzed under the same standards as Title VII claims, Jones v. School Dist. Of Philadelphia, 198 F.3d 403, 409 (3d Cir. 1999), the Court grants Defendants' summary judgment motion on Plaintiff's claims under the PHRA.


CONCLUSION


For the foregoing reasons, the Court GRANTS Defendants' motion for summary judgment in its entirety.